1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| RAY ANTHONY JONES, | 1:07-CV-00656 LJO GSA HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| MENDOZA-POWERS, | |
| Respondent. | |

_____/

17
18
19

        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## PROCEDURAL BACKGROUND

        Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Merced, after being convicted on April 29, 1976, by jury of first degree murder in violation of Cal. Penal Code § 187. See Respondent's Answer to Petition (hereinafter "Answer"), Exhibit 1. He was sentenced to serve an indeterminate term of 7 years to life with the possibility of parole. Id.

        On September 26, 2005, a subsequent parole suitability hearing was held before the California Board of Parole Hearings (hereinafter "Board"). See Answer, Exhibit 2. Petitioner participated in the hearing and was represented by counsel. Id. At the conclusion of the hearing,

1   the Board denied parole and deferred rehearing for two years. Id. at 85, 88.

2       Petitioner then sought relief in the state courts. Petitioner filed a petition for writ of

3   habeas corpus on June 6, 2006, in the Merced County Superior Court. See Answer, Exhibit 4. It

4   was denied on October 18, 2006, in a reasoned opinion. Id. He then filed a habeas petition in the

5   California Court of Appeal, Fifth Appellate District, on September 26, 2006. See Answer,

6   Exhibit 5. The petition was denied on September 29, 2006. Id. Petitioner then filed a petition for

7   review in the California Supreme Court on October 6, 2006. See Answer, Exhibit 6. The petition

8   was denied without comment on April 18, 2007. Id.

9       Petitioner filed the instant petition for writ of habeas corpus in this Court on May 1, 2007.

10  He challenges the 2006 decision of the Board denying parole. He contends the Board wrongfully

11  found him unsuitable because, he argues, he does not pose an unreasonable risk of danger to

12  society. He claims that other than the underlying crime and pre-conviction history which are

13  thirty-one years old, there is no evidence supporting the Board's decision. Respondent filed an

14  answer to the petition on September 17, 2007, and Petitioner filed a traverse on October 22,

15  2007.

16                          **FACTUAL BACKGROUND**[1]

17      On January 3, 1976, at approximately 3:34 p.m., officers were dispatched to Salters

18  Market in Merced, California, as it was reported that a man had been shot during a robbery at that

19  establishment. Officers reported to the scene where they observed the victim, Hebert Morgan,

20  lying between two checkout counters. The victim had bloodstains on his lower-right abdominal

21  area, with a single bullet hole slightly lower and to the right of his navel. Further investigation of

22  the area revealed that the cash register had been opened and emptied.

23      According to Mr. King, a friend of the victim, he and the victim were in the store

24  preparing to make popcorn at the checkout counter when Petitioner entered the store and

25  approached the counter. Petitioner then produced a weapon and demanded money. The victim

26  opened the cash drawer and as Petitioner reached for the cash, with the gun in his hand, it

27  _____

28      [1]The factual background is derived from the transcript of the parole hearing. See Answer, Exhibit 2 at 11-13.

2

discharged. The single round struck the victim in the abdominal area and he then fell to the floor. Petitioner fled the scene immediately after the gun discharged.

On January 4, 1976, an informant contacted Detective Hong. He named Petitioner as the shooter and stated that Petitioner wished to talk to and meet with the detective. Petitioner did meet with the detective and was placed into custody. During the initial interview, Petitioner stated that the gun had discharged by accident and he did not intend to shoot the victim. He had reached into the cash drawer with the gun in his hand and when the victim moved the cash drawer the gun discharged hitting the victim. According to Petitioner, he departed the store and hid in the rafters of a burned-up cabin. He then stated that he had thrown the gun over a fence running from the scene of the robbery. A search of that area produced negative results for the murder weapon.

On January 8, 1976, Petitioner was interviewed and he stated the weapon had been thrown into a canal. Petitioner showed officers a location where the gun might be located. A search of that location was conducted with negative results. Petitioner requested to call one of his sisters, at which time he made contact with a Harvey Williamson, who requested that he be allowed to meet Petitioner in the city. Clearance was granted, at which time Williamson produced a brown paper bag containing a blue-steel .38 revolver.  On March 31, 1976, the court found Petitioner guilty of first-degree murder.

**DISCUSSION**

I.      Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

1    Petitioner is in custody of the California Department of Corrections pursuant to a state

2    court judgment. Even though Petitioner is not challenging the underlying state court conviction,

3    28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the

4    threshold requirement of being in custody pursuant to a state court judgment. <u>Sass v. California</u>

5    <u>Board of Prison Terms</u>, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* <u>White v. Lambert</u>, 370

6    F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a

7    state prisoner in custody pursuant to a state court judgment, even when the petition is not

8    challenging his underlying state court conviction.'").

9    The instant petition is reviewed under the provisions of the Antiterrorism and Effective

10   Death Penalty Act which became effective on April 24, 1996.  <u>Lockyer v. Andrade</u>,  538 U.S. 63,

11   70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the

12   adjudication of the claim "resulted in a decision that was contrary to, or involved an

13   unreasonable application of, clearly established Federal law, as determined by the Supreme Court

14   of the United States" or "resulted in a decision that was based on an unreasonable determination

15   of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.

16   § 2254(d); <u>see</u> <u>Lockyer</u>, 538 U.S. at 70-71; <u>see</u> <u>Williams</u>, 529 U.S. at 413.

17   As a threshold matter, this Court must "first decide what constitutes 'clearly established

18   Federal law, as determined by the Supreme Court of the United States.'" <u>Lockyer</u>, 538 U.S. at 71,

19   *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this

20   Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as

21   of the time of the relevant state-court decision." <u>Id.</u>, *quoting* <u>Williams</u>, 592 U.S. at 412. "In other

22   words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or

23   principles set forth by the Supreme Court at the time the state court renders its decision." <u>Id</u>.

24   Finally, this Court must consider whether the state court's decision was "contrary to, or

25   involved an unreasonable application of, clearly established Federal law." <u>Lockyer</u>, 538 U.S. at

26   72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may

27   grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme]

28   Court on a question of law or if the state court decides a case differently than [the] Court has on a

4

set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), cert. denied, 537 U.S. 859 (2002), rehearing denied, 537 U.S. 1149 (2003).

Petitioner's claims were presented on June 6, 2006, in a petition for writ of habeas corpus to the Merced County Superior Court. See Answer, Exhibit 4. On October 18, 2006, the superior court denied the claims in a reasoned opinion. Id. Petitioner then presented those claims to the appellate court and to the California Supreme Court. Both petitions were summarily denied. See Answer, Exhibits 5, 6. The California Supreme Court, by its "silent order" denying review of the superior court's decision, is presumed to have denied the claims presented for the same reasons stated in the opinion of the superior court.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

5

II.    Review of Petition

A parole release determination is not subject to all the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 12 (1979) (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, an inmate is guaranteed the following process: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; and 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole." Id. It is clear from the record these three guarantees were given. He received notice of the hearing, he was heard at the hearing and he was told why he did not qualify for parole.

"In Superintendent, Mass. Correc. Inst. v. Hill, the Supreme Court held that 'revocation of *good time* does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by *some evidence* in the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass v. California Board of Prison Terms, 461 F.3d 1123, 1128 (9th Cir.2006) (emphasis added). The Ninth Circuit has held that this same standard also extends to parole determinations. Hayward v. Marshall, 512 F.3d 536, 542 (9th Cir.2008), *citing* Irons v. Carey, 505 F.3d 846, 851 (9th Cir.2007), *quoting* Hill, 472 U.S. at 457 ("We have held that 'the Supreme Court ha[s] clearly established that a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record,' or is 'otherwise arbitrary.'"). In assessing "whether a state parole board's suitability determination was supported by 'some evidence' in a habeas case, our analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state." Hayward, 512 F.3d

at 542, *quoting* <u>Irons</u>, 505 F.3d at 851. Here, the Court must look to California law and review the record. In reviewing the record and determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. <u>Sass</u>, 461 F.3d at 1128.

California law provides that after an inmate has served the minimum term of confinement required by statute, the Board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for" the prisoner. Cal. Penal Code § 3041(b). "[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable and denied parole. Cal. Code Regs. tit. 15, § 2402(a). The Board decides whether a prisoner is too dangerous to be suitable for parole by applying factors it has set forth in the California Code of Regulations.

To determine whether 'some evidence' supports the state court decision, the test is not whether some evidence supports the reasons cited for denying parole, "but whether some evidence indicates a parolee's release unreasonably endangers public safety." <u>Hayward</u>, 512 F.3d at 543, *quoting* <u>In re Lee</u>, 143 Cal.App.4th 1400, 1408 (Cal.Ct.App.2006).

In denying parole in this case, the Board provided several reasons for its decision: 1) The nature and gravity of the commitment offense including Petitioner's lack of insight; 2) Prior escalating pattern of criminal behavior and Petitioner's failure to profit from society's previous attempts to correct his criminality; 3) Unstable social history; and 4) Unfavorable psychologist's report. <u>See</u> Answer, Exhibit 2 at 85-88. Petitioner argues there is no evidence to support the finding that he currently poses an unreasonable risk of danger to society if released. Review of the Board's decision reveals the state court decision approving the Board's determination of unsuitability was not unreasonable.

The first factor mentioned by the Board in its decision was the commitment offense itself. Pursuant to § 2402(c)(1)(B), the Board found Petitioner had carried out the offense in a calculated manner. In support of its finding, the Board noted that Petitioner had armed himself

1  prior to the robbery and then pulled the hammer back on his weapon prior to discharging the

2  weapon. See Answer, Exhibit 2 at 85. The finding was further supported by witness Hiram

3  King's testimony that Petitioner had completed the robbery and had turned to go to the door

4  when he suddenly turned back and shot the victim. Id. at 70. The Board also found the motive

5  was exceptionally trivial under § 2402(c)(1)(E). In support, the Board stated the motive of

6  committing a robbery was very trivial in relationship to the offense. Mr. King's testimony that

7  Petitioner had already completed the robbery and was leaving when he turned to shoot the victim

8  further supports the trivial motive finding.

9      The Board also noted Petitioner's lack of insight as significant. Under § 2402(b), the

10  Board properly considers an inmate's past and present attitude toward the crime in determining

11  his suitability. The Board pointed out that Petitioner had no identifiable reason for committing

12  the offense. When asked why, he would repeatedly state, "It just happened." See Answer, Exhibit

13  2 at 15-16. This was of great importance to the Board, because it did not allow the Board to

14  conclude that Petitioner would not commit the offense again. The Board stated: "If it just

15  happened, then what's to say that it won't happen again when you get out. Because if you don't

16  understand why you committed the offense then what's to say that you wouldn't do it again?"

17  See Answer, Exhibit 2 at 94. The Board recommended that Petitioner cooperate with his

18  psychologist in identifying the motivation for the crime and address it with appropriate therapy.

19      Next, under § 2402(c)(2), the Board determined Petitioner had an escalating pattern of

20  violent criminal behavior prior to the offense. The Board noted he had been arrested and/or

21  convicted for petty theft, shop-lifting, truancy, grand theft, burglary, curfew, strong-arm robbery,

22  receiving stolen property, joy-riding, and assault. These priors were committed from the time

23  Petitioner was 12 years old until age 19 when he committed the instant offense. See Answer,

24  Exhibit 2 at 87. The Board further found that Petitioner had failed to profit from society's

25  previous attempts to correct his criminality, which attempts included: juvenile probation, adult

26  probation, county jail, wardship, and camp placement. Id. at 86.

27      The Board also found Petitioner had an unstable social history pursuant to § 2402(c)(3).

28  In support, the Board noted Petitioner's prior criminality and his drug history involving use of

1  marijuana and heroin.

2     Finally, the Board noted the psychological report which was not in favor of parole. Dr.

3  Colleen Schroeder stated that Petitioner was "articulate, obviously intelligent, but . . . guarded

4  with respect to the commitment offense." See Answer, Exhibit 2 at 90. She stated that Petitioner

5  "does admit to poor judgment but declined the opportunity to provide the Board with information

6  that is needed for a decision in his favor." Id. The Board agreed with the assessment, also finding

7  Petitioner had not been totally forthcoming regarding his motivation for the offense. Id. at 90-91.

8     The Board then considered various circumstances which tended to show suitability

9  pursuant to § 2402(d). Petitioner had exceptional work reports while in prison. Id. at 92. In

10  addition, the Board commended him for remaining disciplinary free since 1994. Id.

11     The Board concluded that the nature and gravity of Petitioner's offense, his lack of

12  insight into the events, his recent psychological evaluation, his pattern of criminal conduct prior

13  to imprisonment, and his substance abuse history were indicative of a current danger to the

14  public if released. This Court cannot conclude that the state court rejection of Petitioner's claim -

15  that the Board's determination was not supported by some evidence - was unreasonable.

16     Finally, Petitioner claims the Board has improperly relied on stale factors going back

17  some 31 years to deny him parole. While it is true that in Biggs v. Terhune, 334 F.3d 910, 916-17

18  (9th Cir.2003), the Ninth Circuit stated that "[a] continued reliance in the future on an unchanging

19  factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the

20  rehabilitative goals espoused by the prison system and could result in a due process violation,"

21  this is not the situation here. As fully discussed above, the Board relied on more than just the

22  commitment offense and Petitioner's conduct prior to imprisonment. Moreover, the underlying

23  offense and criminal conduct prior to the offense are not stale factors since the Board and the

24  psychologist found that Petitioner has never fully addressed his motivation for the crime, and

25  therefore, he has failed to demonstrate why he would not pose an unreasonable risk of danger to

26  society if released.

27  ///

28  ///

**RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.      The Petition for Writ of Habeas Corpus be DENIED; and

2.      The Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the Objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the Objections.  The Finding and Recommendation will then be submitted to the District Court for review of the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).


     IT IS SO ORDERED.

 **Dated:    May 20, 2008**          _____/s/ **Gary S. Austin**_____
                                      UNITED STATES MAGISTRATE JUDGE